**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA
*Plaintiff-Appellee,*

v.

KEVIN ERIC CURTIN,
*Defendant-Appellant.*

No. 08-10394

D.C. No.
2:04-cr-00064-KJD-
PAL-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Submitted November 25, 2009*

Filed December 4, 2009

Before: J. Clifford Wallace, Stephen S. Trott, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Trott

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

15891

**COUNSEL**

Jason F. Carr, Federal Public Defender's Office, Las Vegas, Nevada, for the defendant-appellant.

Adam M. Flake, United States Attorney's Office, Las Vegas, Nevada, for the plaintiff-appellee.

**OPINION**

TROTT, Circuit Judge:

Kevin Eric Curtin stands convicted by a jury of (1) travel with intent to engage in a sexual act with a juvenile, in violation of 18 U.S.C. § 2423(b), and (2) one count of coercion and enticement, in violation of 18 U.S.C. §§ 2422(b) and 3583(k). He appeals, alleging (1) errors in the admission and exclusion of evidence regarding his intent, and (2) the imposition of a vindictive sentence of lifetime supervised release. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

# I

This is the second time Curtin has been convicted of these charges. Our court sitting en banc reversed his first conviction because of the improper admission against him of evidence of salacious stories involving adult sexual misbehavior with juveniles. Investigators found these stories at the time of his arrest on his electronic personal digital assistant, or "PDA." We remanded for a new trial. *United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc).[1] The judge who conducted the first trial recused himself, and a new judge presided over the proceedings which now bring Curtin to us on a new record. Curtin concedes that his retrial complied with our en banc court's instructions with respect to the admission of only one redacted story found on his PDA.

# II

The facts underlying these charges are well arrayed in our en banc opinion, *id.* at 937-38, and need not be repeated here. Suffice it to say that the charges Curtin faced were the result of a government initiated sting operation designed to identify adults trolling sexually for juveniles using the Internet. His only defense was that he had no intent to engage an underage female in a sexual encounter. He asserted that his "role-playing" plan was only to meet an adult pretending to be a child for that purpose.

# III

We review a court's decision to admit or to exclude evidence, including expert opinion testimony, for an abuse of discretion. Our standard of review covering allegations of the imposition of a vindictive sentence following a retrial is de novo. *United States v. Garcia-Guizar*, 234 F.3d 483, 489 & n.2 (9th Cir. 2000).

---

[1]Our en banc court has assigned this appeal to the original panel.

## IV

As part of the government's case, the court admitted only one carefully redacted story from Curtin's PDA entitled "Melanie's Busy Day, An Erotic Story." This story explicitly described prurient sexual activity between an adult and a child.

To dilute the import of this evidence, the defense on cross-examination elicited from the FBI agent who found and examined Curtin's PDA testimony that it contained other stories in addition to "Melanie's Busy Day," and that the other stories pertained to innocent subjects that did not involve sex with juveniles or children, such as science fiction.

To blunt the inference that "Melanie's Busy Day" was just one of many other innocent stories, the court then permitted the agent on redirect to testify that the total number of child/ sex stories in the PDA was in excess of 140. To this evidence, the defense had objected pretrial, claiming that the number of stories itself was more prejudicial than probative, relying on Rule 403 of the Federal Rules of Evidence. The court deferred its ruling on the defense's objection, saying that during trial the number "may become relevant — more relevant than prejudicial once the defendant takes the stand," asserting the role-play fantasy defense. During the trial, after Curtin's counsel pointed out the existence of science fiction and other stories on the PDA, the court said in response to the government's claim that "the door has been opened":

> Well, it has been made to appear that there is only one story and that all of these other things are on there: science fiction, dance, other literature, "Space Jockey." I'm going to allow you to — to just talk about the number, not go into details.

[1] On review, we conclude that the court's decision was an appropriate exercise of discretion. Under the circumstances

of this case examined in the light of Curtin's defense and his cross-examination of the agent, the simple number of sexually-oriented stories on Curtin's PDA was more relevant than prejudicial to counter the inference Curtin attempted to create that "Melanie's Busy Day" was a small, insignificant and thus non-probative part of the PDA's total content. We note that Curtin does not challenge either the large number of stories in his PDA or the agent's characterization of them as involving child/adult sexual behavior. In fact, Curtin's counsel admitted to the court that the now-disputed stories "are all of that nature," meaning child/adult sex stories. Thus, Curtin's claim on appeal that the court did not read all the stories to verify what his counsel conceded is meritless.

**[2]** Notwithstanding Curtin's opening concession that "the lower court faithfully followed" on remand our en banc opinion, he continues to attack the government's use of the redacted story "Melanie's Busy Day," accusing the government of intentionally attempting to prejudice him in the eyes of the jury and claiming that the evidence served "only a 'highly improper and offensive purpose.' " To make this challenge, Curtin once again relies heavily on *United States v. Shymanovitz*, 157 F.3d 1154 (9th Cir. 1998), *overruled* by *United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc). However, *Shymanovitz*'s categorical exclusion of reading materials from the types of evidence that might fall within Rule 404(b) of the Federal Rules of Evidence in addition to that opinion's wholesale condemnation of this kind of evidence was expressly overruled in our en banc holding in this case, 489 F.3d at 943, n.3, 953-56; and on this issue, *Shymanovitz* is no longer valid precedent. Thus, the central question here is only whether any potential unfair prejudice arising from such evidence was appropriately outweighed by its probative value. The evidence admitted against Curtin in his retrial — all of it — safely passes our Rule 403 test. *Curtin*, 489 F.3d at 956-58.

## V

**[3]** In an effort to bolster a defense the court later determined to be unbelievable, the defense called a licensed marriage and family therapist to the stand to testify about "fantasies and sexual behavior," as this subject relates to the Internet. The court permitted her to explain to the jury Internet "role playing fantasy" and to state that such an aberration does exist, but the court — after a full *Daubert* hearing, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) — excluded other parts of her proffered testimony about a survey, concluding that it was "not reliable" and would "not assist the jury." The defense contests this ruling. Here is the court's Order:

> Presently before the Court is the Motion of the United States to Preclude Expert Testimony. Defendant filed a response in opposition to which the Government replied. The Court has considered the testimony adduced at the *Daubert* hearing of May 27, 2008, together with the briefs of the parties and Defendant's amended notice and expert report.

> During the hearing, it became clear that much of the anticipated testimony of Elizabeth Griffin regarding Defendant's activities and intent is based upon a survey of 400 to 500 youth. This "survey" was conducted by Griffin and her associates, however has not yet been published, subjected to peer review, or even presented for analysis of methodology. Her conclusions are that only 5% of those using the Internet Relay Chat (IRC) are minors, however she did not correlate these statistics with the time of the alleged crimes, February of 2004, and the survey involved only adolescents from Minnesota, New York and Pennsylvania.

> In furtherance of her conclusion that Defendant's actions were "consistent" with his claim of inno-

cence, Griffin stated that Defendant did not engage in "grooming" which she stated was also "consistent" with his claim of innocence. However, on cross-examination she conceded that Defendant had engaged in conduct associated with grooming, albeit an expedited version of grooming. Also, as was pointed out in the hearing, it has been the experience of this Court that virtually all of the Defendants who have been convicted in this Court of crimes similar to those with which Defendant is charged, utilized the same basic approach as employed by Defendant in this case.

Because Ms. Griffin's testimony in the foregoing areas was not established as reliable or as something that would assist the jury, she will not be permitted to offer testimony concerning same.

However, Griffin has established that she is a licensed marriage and family therapist and that she has had extensive experience with sex offenders. Assuming that some of the jurors may not be as well read as others, the Court will permit the witness to testify concerning to the [sic] role of fantasies in sexual behavior and to further testify that many people fantasize about things they would never do in actuality. The witness may also be used in the event the Government presents testimony that use of the IRC channel is evidence of intent to have sex with children, or to respond to any other conclusory statements regarding Defendant's intent.

This order speaks for itself. Read in the light of the record, the court's decision was an appropriate exercise of discretion.

## VI

**[4]** Curtin's original five-year sentence, the incarceration part of which he has already served, included a five-year term

of supervised release. After his second trial, the court imposed a sentence including a lifetime term of supervised release, which is authorized specifically pursuant to 18 U.S.C. § 3583(k), and permitted generally by *Williams v. New York*, 337 U.S. 241, 249-52 (1949) (new relevant information may justify a greater sentence after retrial) and *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969), *partially overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989), *limitation recognized by Texas v. McCullough*, 475 U.S. 134, 138 (1986), ("[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for . . . doing so must affirmatively appear."). However, Curtin alleges that this extended term constitutes a vindictive sentence and must be vacated in favor of the original five-year term of supervision.

[5] To be vindictive and thus impermissible, a sentence must be designed to punish an individual for "exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). There is no such infirmity in this case.

We note preliminarily that the court could have imposed a sentence of years in prison greater than the five years Curtin received at the conclusion of his first trial. The court did not do so, concluding that the term of years was adequate. This fact alone rebuts Curtin's claim that any part of his sentence was vindictive. We note also that the defense did not object when Curtin's sentence was pronounced to the lifetime term of supervised release as "vindictive," but instead only that the first judge did not believe that such a term was necessary. Furthermore, the court's explanation of its reasons for the lifetime supervised release is reasonable and fully supported by the record:

> The Court in imposing lifetime supervision has taken into consideration the defense, which was fantasy role-play. The Court finds that no reasonable

juror could have believed that defense because the decoy looked every day of her actual age, 33, as of the trial, the second trial, and I'm certain that she didn't dramatically age in Dorian Gray fashion at 29 — or following 29 when she was in the first trial and subsequent to the offense. If the defendant was looking for fantasy role-play, he had a person who was obviously over the age of 15. She didn't look anything like 15 and no reasonable juror could have believed the defense that the defendant thought she was too young.

[The] Court also has taken into consideration the occupation of the defendant, his role as a — and employment as a magician. This gives access to young audiences and there is a need, as long as that is his occupation, to — to protect minors. And lifetime supervision will provide that.

One other comment with respect to the decoy. The decoy said that she said hi to the defendant. The — there was no questioning regarding whether she spoke in falsetto. But, from the Court's observation of the answer, she had a deep voice, not one of a teenager, which gave additional validity to the Court's conclusion that no one could have concluded she was a minor because she looked and spoke every day of her age of 29 or 33 as she was at the trial.

I suppose that the Circuit Courts in looking at these cases does [sic] not get the — the impact of the — that is received by the trial judge. And so, looking at this in a vacuum, there might be some plausible thought to the defense of fantasy role-play. However, as a trial judge who saw and heard the evidence live and not reading it on a piece of paper, I find the — the defense of fantasy role-play unbelievable and that no reasonable juror could have believed it.

**[6]** First, the judge who imposed the challenged term of supervised release was not the judge we reversed on appeal. Accordingly, as Curtin concedes in his reply brief, no presumption of vindictiveness attaches. *United States v. Newman*, 6 F.3d 623, 630 (9th Cir. 1993); *Garcia-Guizar*, 234 F.3d at 489-90 ("If the presumption does not apply, the 'burden remains upon the defendant to prove actual vindictiveness.' ") (citations omitted).

**[7]** Second, the government recommended the same sentence it recommended after the first trial. This fact, and the record, dispel the claim that Curtin was the target of prosecutorial vindictiveness.

**[8]** Third, the government introduced new evidence relevant to resentencing and the need for future supervision of Curtin. This information indicated that Curtin intended a subsequent contact with a "real juvenile," not just a decoy, and that he had directions to a minor's house where a minor did in fact reside. The evidence suggested that Curtin had the potential to be a repeat offender, and that the events underlying his conviction were not isolated in nature.

**[9]** Fourth, the court determined that Curtin's defense was a fabrication, a false story designed to escape the reach of the law and to hoodwink the jury. Curtin claimed that he was looking for an adult; but when he saw an adult, he abruptly turned and left the premises. All the evidence and inferences supported the jury's and the court's finding that he had, and continues to have an active sexual interest in persons below the age of consent.

**[10]** Fifth, Curtin's profession as a magician could well include contact with minors and children. The district court explained the justifications for lifetime supervision and the record more than supports the court's concern for temptation and recidivism.

**[11]** Sixth, the court indicated on the record a willingness to shorten the term of supervision should the defendant participate in counseling and treatment and comply with all the terms of his release.

**[12]** Accordingly, we conclude that the court's choice of a lifetime term of supervision was (1) grounded in the evidence, (2) well within the court's prerogative, and (3) designed only to protect and to serve the public interest, not to punish the defendant. Curtin's fanciful allegations of vindictiveness have not a scintilla of support in this record. There is no "reasonable likelihood" that his extended term of supervised release was "the product of actual vindictiveness." *Alabama v. Smith*, 490 U.S. 794, 799 (1989) (citation omitted).

**AFFIRMED.**