# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 8, 2014　　　　　Decided October 21, 2014

No. 13-3066

UNITED STATES OF AMERICA,
APPELLEE

v.

PAUL DAVID HITE,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cr-00065-1)

---

*Lawrence S. Robbins* argued the cause for appellant. With him on the briefs was *Barry J. Pollack*.

*A.J. Kramer*, Federal Public Defender, and *Jonathan Jeffress* and *Rosanna M. Taormina*, Assistant Federal Public Defenders, were on the brief as appointed *amicus curiae* The Federal Public Defender for the District of Columbia in support of the appellant.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen*, *Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *David B. Kent*, Assistant U.S. Attorneys.

Before: ROGERS, PILLARD and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Wilkins.

WILKINS, *Circuit Judge*: Following a jury trial, Paul David Hite was convicted under 18 U.S.C. § 2422(b) of attempting to persuade a minor to engage in unlawful sexual activity. Hite's conviction was based on Internet and telephone conversations that he had with an undercover detective who claimed to be an adult male with access to a twelve-year-old girl and a three-year-old boy. The District Court sentenced Hite to twenty-two years of imprisonment and a fine of $500,000. Hite now appeals his conviction.

The primary issue Hite raises on appeal is one of first impression for this Court: whether 18 U.S.C. § 2422(b) requires direct communications with a minor. We hold that a defendant can be convicted under § 2422(b) for communicating with an adult intermediary, if the defendant's communications with the intermediary are aimed at persuading, inducing, enticing, or coercing the minor. Nevertheless, because the District Court erred in instructing the jury and excluding expert testimony crucial to the defense, we vacate Hite's conviction and remand for a new trial.

## I.

Hite is a fifty-eight-year-old anesthesiologist from Richmond, Virginia. On February 1, 2012, Hite, using screen name "VetteguyZ06," entered a private chat room on gay.com and initiated a conversation with "DCped," a single man in the District of Columbia area who described himself as a "[n]o limit perv." S.A. 98-99. "DCped" told Hite that he had an ongoing sexual relationship with a twelve-year-old girl (who he claimed was the daughter of his girlfriend) and had

limited sexual contact with his three-year-old nephew. J.A. 517. Hite responded, "mmmm----HOT," and told "DCped" that he had previously been sexually active with the eleven-year-old son of his friend. *Id.* In reality, "DCped"—or J.P., as he later told Hite—was an online persona created by Metropolitan Police Department Detective Timothy Palchak. Both minors with whom J.P. claimed to be sexually involved were fictitious.

J.P. and Hite exchanged Yahoo Instant Messenger screen names and continued their conversation later that evening, during which Hite probed J.P. regarding his sexual encounters with the twelve-year-old girl, "Christy," and his nephew. J.A. 518-21. When J.P. brought up the possibility that Hite could "hook up" with him and Christy, Hite responded, "would love to do a bi 3 way with you and a yng girl[.]" J.A. 521. Hite also told J.P. that he could show Christy a picture of his gay.com profile picture and said that he "want[s] her to be into it." J.A. 521-22.

Over the course of the next two weeks, Hite and J.P. communicated using Yahoo Instant Messenger and discussed in graphic detail their plans to engage in sexual activities with the two minors. Hite told J.P. that he hoped Christy would like his profile photo, J.A. 526, and that he was "willing to take it slowly at her pace," J.A. 527. With respect to J.P.'s three-year-old nephew, Hite suggested that "a more gradual way to proceed" would be appropriate, such as taking a shower together or wrestling in their underwear. J.A. 538. In addition, Hite proposed using "jelly or honey" to "keep him enticed," J.A. 556, and suggested using the peanut-butter-and-jelly mix that he had received as a gag gift with the boy, noting that it "would be perfect to stimulate oral exploration." S.A. 201-02. Hite also asked J.P. if he ever gave the minors "any alcohol to relax them." When J.P. responded, "Christy,

yes; Benadryl to nephew," Hite stated, "[n]ice on both counts," and later reminded J.P. that they would need to give the boy Benadryl, in part to "distort any recollection he could have." S.A. 180; J.A. 551, 557. On one occasion, J.P. asked Hite, "are you sure your [*sic*] not just into the fantasy of this??" J.A. 548. Hite responded, "it has been ages since I have been active----FACT, never played with a boy your nephew's age but VERY interested." *Id.* He shared the details of his prior sexual experience with an eleven-year-old boy and told J.P. that there was "NOTHING hotter" than "explor[ing] the real thing with a like-minded bud[.]" J.A. 550-52.

After several days of online chatting, J.P. told Hite that he would be babysitting his nephew on February 18, 2012. The two men agreed that they should meet on February 17 to "validate," i.e., confirm that neither of them is an undercover cop, before engaging in sexual activities with the three-year-old boy on the next day. S.A. 191-93. A few days before their scheduled meeting, however, Hite expressed nervousness and emphasized that they would be "[t]wo adults meeting Friday night to explore and discuss common interests," "[n]othing else expected or implied." S.A. 217. When the two men spoke on the phone later that day, Hite reiterated, "[a]ny of the conversation that we have I'm sure on my end, and on your end also, has been totally fantasy, and it's just the two of us meeting Friday night to explore, and you know, discuss various things, correct?" J.A. 585. Hite also asked for, and received, directions to J.P.'s apartment in the District of Columbia. J.A. 593-94.

On February 17, 2012, instead of meeting J.P. in person as planned, Hite spoke to J.P. on the phone and revealed that he had "spent two sleepless nights . . . trying to re[lieve] [his] paranoia." J.A. 598. To ease Hite's nervousness, J.P. offered

to do a "webcam session" performing fellatio on his nephew on the following morning, so that Hite could see that he was "legit." J.A. 599. Relieved, Hite responded, "Okay, fabulous," and the two men discussed the weekend weather forecast; Hite told J.P. that he could drive a "4-wheel drive vehicle," in case of snow. J.A. 599-602.

The webcam session never took place. Hite was arrested later that evening at a gas station near his home in Richmond, Virginia. S.A. 322-24, 328-29.[1] During a search warrant executed at Hite's home, officers seized a laptop and recovered 400 "thumbnail" images of child pornography that had been opened from a separate electronic storage device, as well as an Internet search history indicating that Hite had searched "mapquest" for the Verizon Center, a landmark near J.P.'s fictitious residence. S.A. 345-52, 364-66. The officers also found a jar of peanut-butter-and-jelly mix in the laundry room. S.A. 370-72.[2]

Hite was charged with two counts of attempted coercion and enticement of a minor under 18 U.S.C. § 2422(b). Hite's primary defense at trial was that he was engaged in fantasy and role-play and had no intention of engaging in sexual activities with a real child. After a three-day trial, the jury convicted Hite on both counts.

---

[1] Hite's friend testified that Hite had told him during dinner on February 17, 2012, that he was considering traveling to Washington, D.C., the next day to meet a person he had met online. The friend testified that Hite said that he would call in the morning to let him know whether he would be traveling to D.C. S.A. 316-20.

[2] Hite's mother testified at trial that the jar of peanut-butter-and-jelly mix was in Hite's utility room in January 2012. S.A. 375-78.

On appeal, Hite contends that he should not have been convicted under § 2422(b) because he never communicated directly with a minor and never attempted to persuade a minor through the use of a means of interstate commerce. Alternatively, Hite argues that he is entitled to a new trial because of a series of errors made by the District Court. In particular, he claims that the District Court (1) provided erroneous jury instructions; (2) improperly excluded the proposed testimony of his expert; and (3) prevented his counsel from impeaching Detective Palchak during cross-examination. Lastly, Hite requests reassignment to a different District Court judge on remand. We address each argument in turn.

## II.

Hite submits that his conduct did not violate 18 U.S.C. § 2422(b) because the statute requires direct communications with a minor and the use of a means of interstate commerce for the act of persuasion itself. Hite contends that each of the *actus reus* verbs in § 2422(b) describes an action directly performed by one person on another. He further claims that the statute's legislative history is devoid of any mention of adult intermediaries, and that any statutory ambiguity must be resolved in his favor under the rule of lenity.

Although it is a question of first impression for this Court, this is not the first time that a defendant has argued that § 2422(b) only applies to direct communications with a minor. Seven of our sister circuits have considered the issue and rejected a categorical requirement that the defendant communicate directly with a minor, rather than through an adult intermediary. *United States v. McMillan*, 744 F.3d 1033 (7th Cir. 2014), *cert. denied* --- S. Ct. ---- (Oct. 6, 2014); *United States v. Caudill*, 709 F.3d 444 (5th Cir. 2013), *cert.*

*denied*, 133 S. Ct. 2871 (2013); *United States v. Berk*, 652 F.3d 132 (1st Cir. 2011); *United States v. Douglas*, 626 F.3d 161 (2d Cir. 2010) (per curiam); *United States v. Nestor*, 574 F.3d 159 (3d Cir. 2009); *United States v. Spurlock*, 495 F.3d 1011 (8th Cir. 2007); *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004).  Today, we join our sister circuits and hold that communications with an adult intermediary to persuade, induce, entice, or coerce a minor are punishable under § 2422(b), so long as the defendant's interaction with the intermediary is aimed at transforming or overcoming the minor's will in favor of engaging in illegal sexual activity.

We review questions of statutory interpretation *de novo*. *United States v. Wishnefsky*, 7 F.3d 254, 256 (D.C. Cir. 1993). As always, we begin with the text of the statute.  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *United States v. Barnes*, 295 F.3d 1354, 1359 (D.C. Cir. 2002).  "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms."  *Caminetti v. United States*, 242 U.S. 470, 485 (1917).  The search for the meaning of the statute must also include an examination of the statute's context and history. *See Bailey v. United States*, 516 U.S. 137, 144-45 (1995).

With these principles in mind, we turn first to the statutory text, 18 U.S.C. § 2422(b), which provides that:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades,

8

> induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

The ordinary meanings of the verbs persuade, induce, entice, and coerce demonstrate that § 2422(b) is intended to prohibit acts that seek to transform or overcome the will of a minor. For instance, "persuade" is commonly defined as "[t]o induce or win over (a person) to an act or course of action; to draw the will of (another) to something, by inclining his judgement [*sic*] or desire to it; to prevail upon, to urge successfully, to do something," OXFORD ENGLISH DICTIONARY (2d ed. 1989), or "to win over by an appeal to one's reason and feelings, as into doing or believing something," BLACK'S LAW DICTIONARY (6th ed. 1990). *See also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (1981) (defining "persuade" as "to induce by argument, entreaty, or expostulation into some mental position . . . win over by an appeal to one's reason and feelings (as into doing or believing something)"). Likewise, "induce" is ordinarily defined as "[t]o lead (a person), by persuasion or some influence or motive that acts upon the will," "to lead on, move, influence, prevail upon (any one) *to do* something." OXFORD ENGLISH DICTIONARY (2d ed. 1989) (emphasis in original). *See also* BLACK'S LAW DICTIONARY (6th ed. 1990) ("induce" defined as "[t]o bring on or about, to affect, cause to influence to an act or course of conduct, lead by persuasion or reasoning, incite by motives, prevail on"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY,

UNABRIDGED (1981) ("induce" defined as "to move and lead (as by persuasion or influence)," "prevail upon," and "to bring on or bring about"). "Entice" and "coerce" similarly connote efforts to affect the mind or will of another. *See*, *e.g.*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("entice" means "to lure, induce, tempt, incite, or persuade a person to do a thing"; "coerce" means "[c]ompelled to compliance; constrained to obedience, or submission in a vigorous or forcible manner"). Congress is presumed to use words in the common, ordinary meaning absent contrary indication, and we find none here. *See, e.g., FDIC v. Meyer*, 510 U.S. 471, 476 (1994); *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004).

Hite argues that in common parlance these verbs usually describe direct interactions. Appellant Br. 11-13. But even if Hite is correct about what usage is most common, we cannot ignore that customary usage of these verbs also includes the use of intermediaries to transform or overcome another's will. *See* OXFORD ENGLISH DICTIONARY (2d ed. 1989) ("I wish you'd just try to persuade Lou off a silly idea she's just got hold of."); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (1981) ("Burt, aided by his father and friends, induced Congress to aid his state in building such a canal."). As several of our sister circuits have noted, the statutory terms naturally incorporate the use of intermediaries. *See, e.g., McMillan*, 744 F.3d at 1036 ("One particularly effective way to persuade or entice a person to do something is to enlist the help of a trusted relative, friend, or associate."); *Nestor*, 574 F.3d at 162 n.4 ("Businesses and individuals regularly seek to persuade others through advertising intermediaries and negotiating agents.").

In addition to the fact that conventional usage of persuade, induce, entice, and coerce encompasses the use of

intermediaries, Hite's position is undermined by Congress's inclusion of the phrase "or attempts to do so" in the statutory text. The inclusion of the verb "attempt" in § 2422(b) is quite significant, because "[t]here is no general federal 'attempt' statute. A defendant therefore can only be found guilty of an attempt to commit a federal offense if the statute defining the offense also expressly proscribes an attempt." *United States v. Hopkins*, 703 F.2d 1102, 1104 (9th Cir. 1983) (citing *United States v. Joe*, 452 F.2d 653, 654 (10th Cir. 1971); *see also Liu v. Amerco,* 677 F.3d 489, 494 (1st Cir. 2012); *United States v. Douglas*, 525 F.3d 225, 251 (2d Cir. 2008); *United States v. Duka*, 671 F.3d 329, 353-55 (3d Cir. 2011). Consequently, by inserting this verb in § 2422(b), Congress deliberately intended that situations in which a defendant used a means of interstate commerce to attempt to persuade, induce, entice, or coerce a minor into performing illegal sexual activities would be prosecuted to the same extent as the completed offense.

Although § 2422(b) does not define "attempt," we have no reason to doubt that Congress was aware of how the law of attempt would apply to the statute. At the time of the enactment of § 2422(b) in 1996, the general meaning of "attempt" in federal criminal law was an action constituting a "substantial step" towards commission of a crime and performed with the requisite criminal intent. *See*, *e.g.*, *Braxton v. United States*, 500 U.S. 344, 349 (1991) ("For Braxton to be guilty of an attempted killing under 18 U.S.C. § 1114, he must have taken a substantial step towards that crime, and must also have had the requisite *mens rea*."). Furthermore, "when causing a particular result is an element of the crime," the defendant was guilty of attempt when he intended to cause such a result and "d[id] or omit[ted] to do anything with the purpose of causing or with the belief that it [would] cause such result without further conduct on his

part." BLACK'S LAW DICTIONARY (6th ed. 1990). Accordingly, courts commonly held that a defendant completed a "substantial step" sufficient to prove attempt when he utilized another person to perform an element of the crime with the clear intent to cause the harm proscribed by the statute. *See, e.g.*, *United States v. Rovetuso*, 768 F.2d 809, 821-23 (7th Cir. 1985) (attempted witness tampering proven where defendant solicited undercover agent to kill witness); *United States v. Brown*, 604 F.2d 347, 350 (5th Cir. 1979) (attempted destruction of a building using fire or explosive proven where defendant reached agreement with undercover officer to provide bomb materials and sent other individuals to reconnoiter grocery store intended for destruction).

In the context of § 2422(b), communications with an intermediary aimed at persuading, inducing, enticing, or coercing a minor to engage in sexual activity fit within this common understanding of "attempt." *See United States v. Lee*, 603 F.3d 904, 915 (11th Cir. 2010) (substantial step where defendant did not communicate directly with minors but rather "requested assistance from the one woman who had 'influence and control over [the] daughters,'" their mother); *Spurlock*, 495 F.3d at 1014 ("Spurlock intended to entice minor girls to have sex with him, and . . . his conversations with their purported mother were a substantial step toward that end."). As the Seventh Circuit noted in *McMillan*, "[t]he essence of this crime is the defendant's effect (*or attempted effect*) on the child's mind. Nothing in the statute requires the minor to be the direct recipient of the defendant's message, whether it comes in conversation, by telephone, by text, by email, or in some other way." 744 F.3d at 1036 (emphasis added).

The context and history of the statute, *see Bailey*, 516 U.S. at 146-47, supports this interpretation of § 2422(b). The

purpose of § 2422(b) was to protect minors from sexual exploitation by online predators. The House Conference Report of the Telecommunications Act of 1996, which included § 2422(b), notes that "the Senate Judiciary Committee held a hearing on online indecency, obscenity, and child endangerment . . . this hearing supports the need for Congress to take effective action to protect children and families from online harm." H.R. Rep. No. 104-458, at 193 (1996) (Conf. Rep.). The Committee Report on the Child Protection and Sexual Predator Punishment Act of 1998, which increased the penalty for violation of § 2422(b), emphasizes that the bill was "a comprehensive response to the horrifying menace of sex crimes against children, particularly assaults facilitated by computer . . . [that seeks to] provid[e] law enforcement with the tools it needs to investigate and bring to justice those individuals who prey on our nation's children." H.R. Rep. No. 105-557, at 10 (1998). As a sister circuit concluded, "[t]he primary evil that Congress meant to avert by enacting § 2422(b) was the psychological sexualization of children." *United States v. Fugit*, 703 F.3d 248, 255 (4th Cir. 2012), *cert. denied*, 134 S. Ct. 999 (2014). Prohibiting the use of intermediaries to induce minors (or to attempt to induce them) is consistent with this goal.[3]

---

[3] Hite also contends that Congress could have, but did not, include the phrase "directly or indirectly" in the text, as it has done with numerous other statutes, and that the legislative decision to omit this language indicates that only direct contact with minors falls within the statute's prohibition. Appellant Br. 12-13. This argument fails for two reasons. First, the use of the phrase "directly or indirectly" potentially sweeps in conduct far beyond that present in this case, *cf. Jarvis v. U.S. Civil Serv. Comm'n*, 382 F.2d 339, 344 (6th Cir. 1967) (determining that Hatch Act prohibition on indirectly coercing state employees to make political donations "forbids even advice"), and Hite provides no support for the argument that Congress generally uses this phrase when it wishes to

In conjunction, this context and history, combined with the dictionary definitions, common usages, and accepted legal interpretations, demonstrates that § 2422(b) criminalizes situations in which a defendant transforms or overcomes the will of a minor by way of an adult intermediary.[4] To the extent that there is any ambiguity in the statute's text, that ambiguity does not approach the type of "grievous ambiguity or uncertainty" that permits the application of the rule of lenity. *See Dean v. United States*, 556 U.S. 568, 577 (2009) (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998)); *see also Abramski v. United States*, 134 S. Ct. 2259, 2272 n.10 (2014) ("The dissent would apply the rule of lenity here because the statute's text, taken alone, permits a

---

include the use of an intermediary within the scope of the offense. Second, as discussed above, Hite was charged with using the Internet to attempt to entice a minor, and the legal definition of attempt at the time of the enactment of § 2422(b) contemplated the use of an intermediary.

[4] Hite urges us to follow the dissent in *United States v. Laureys*, 653 F.3d 27 (D.C. Cir. 2011). In *Laureys*, the Court did not address the question of statutory interpretation. However, the dissent examined the issue and concluded that "§ 2422(b) requires an attempt to bend the child-victim's will." *Id.* at 40 (Brown, J., dissenting). We disagree with Hite's construal of the dissent as opposing the statute's application to all indirect communications. Properly read, the dissent in *Laureys* suggested that convictions under § 2422(b) may be permissible based on communications with intermediaries, if such communications are "a vehicle through which the defendant attempted to obtain the child's assent, or a substantial step toward persuasive communication with the child herself." *Id.* (footnotes omitted); *see also id.* at 39 n.2 (noting that "there is no evidence Laureys attempted to entice the fictitious girl through his online communication with [the adult intermediary]").

narrower construction, but we have repeatedly emphasized that this is not the appropriate test.").

By the same token, we reject the Government's argument that § 2422(b) does not require the defendant to attempt to transform or overcome the minor's will. Appellee Br. at 31-33; Oral Arg. Tr. at 21-22. While the statute does not preclude the use of an intermediary, it clearly establishes the "individual who has not attained the age of 18 years," § 2422(b), as the intended object of the *actus reus* verbs. *See United States v. Engle*, 676 F.3d 405, 419 (4th Cir. 2012) (noting that § 2422(b) "criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions [concerning] the actual consummation of sexual activities with the minor") (quoting *United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011) (internal quotation marks omitted)); *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011) ("Section 2422(b) essentially requires proof that the defendant attempted to communicate with the minor, and through that communication, transform the minor into his victim.").

Accordingly, where an adult intermediary is involved, the defendant's interaction with the intermediary must be aimed at transforming or overcoming the child's will to violate § 2422(b). *See United States v. Nitschke*, 843 F. Supp. 2d 4, 13 (D.D.C. 2011) (dismissing indictment under § 2422(b) where the defendant "never sought Detective Palchak's help in procuring the fictitious minor," "did not ask Palchak to pass along any communication whatsoever to the minor," and "did not make any promises to the minor through Palchak"). The "substantial step" required to prove an attempt under § 2422(b) must therefore strongly corroborate the defendant's intent to engage in conduct that is designed to persuade, induce, entice, or coerce the minor by way of the

intermediary.[5] In *McMillan*, for instance, the Seventh Circuit found that the defendant had taken a substantial step when he offered to send a picture of his penis to the girl's father so that he could show it to the girl, asked to talk to her directly, and asked the girl's father if he had talked to her about their plans. 744 F.3d at 1037. *See also Dworken*, 855 F.2d at 17 ("If the substantial steps are themselves the sole proof of the criminal intent, then those steps unequivocally must evidence such an intent; that is, it must be clear that there was a criminal design and that the intent was *not* to commit some non-criminal act.") (emphasis in original).

Hite also argues that the statute requires the use of a means of interstate communication for the act of persuasion of the minor (or the attempt to persuade the minor). Appellant Br. 17-19. Hite relies heavily on *Bailey*, but the Supreme Court's reading of "use" of a firearm to require "active employment" in the commission of an underlying offense was broader than Hite acknowledges. *Bailey* notes

---

[5] For an action to constitute a "substantial step," it must "strongly corroborate[] the firmness of defendant's criminal attempt," *United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001), such that "a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute," *United States v. Dworken*, 855 F.2d 12, 19-20 (1st Cir. 1988)) (quoting *United States v. Rivera-Sola*, 713 F.2d 866, 870 (1st Cir. 1983)) (internal quotation marks omitted). As set forth in a very fine standard instruction on substantial step, "the government must prove beyond a reasonable doubt, that the mental processes of Defendant [ ] passed from the stage of thinking about the crime of [ ] to actually intending to commit that crime and that the physical process of Defendant [ ] went beyond and passed from the stage of mere preparation to some firm, clear, and undeniable action to accomplish that intent." 2 Kevin F. O'Malley et al., *Federal Jury Practice & Instructions* § 21:04 (6th ed. 2014).

that such "use" even includes a defendant's mere "reference to a firearm in his possession" when such reference is "calculated to bring about a change in the circumstances of the predicate offense." 516 U.S. at 148. To the extent that prohibited "use" is narrowed by the requirement of the firearm statute that it occur "*during and in relation to*" the predicate offense, 18 U.S.C. § 924(c)(1) (emphasis added), that operative phrase was critical to the holding, 516 U.S. at 150, and because no similar limitation appears in § 2422(b), Hite's reliance on *Bailey* falls short. Even if the phrase "during and in relation to" were present in § 2422(b), it would not inevitably follow that the use of interstate communication would need to temporally coincide with the act of persuasion, for as one of our sister circuits observed in connection with § 924(c)(1), while "temporal proximity between the carrying of a firearm and drug trafficking activity is important, a finding of temporal proximity or the lack thereof does not automatically establish or prohibit a finding of 'in relation to.'" *United States v. Bailey*, 235 F.3d 1069, 1073 (8th Cir. 2000), *cert. denied*, 534 U.S. 879 (2001) (firearm is "carried" under § 924(c)(1) by carrying gun in apartment where drugs were usually stored and thereby reassuring confederates that the apartment was protected, even if "there were no actual drug trafficking activities going on in the apartment at the time of the carrying").

Consistent with this reasoning, we see no requirement that the defendant or his intermediary use (or intend to use) the telephone or Internet for the decisive act of persuasion of the minor. Where an adult intermediary is involved, we hold that "using the mail or any facility or means of interstate or foreign commerce" pursuant to § 2422(b) is satisfied if the defendant knowingly and actively employs such interstate means for the essential function of communicating with the adult intermediary for the purpose of persuading, inducing,

enticing, or coercing the minor. *See Bailey*, 516 U.S. at 144-48 (holding that "use" of firearm in 18 U.S.C. § 924(c)(1) requires an "active employment" of the firearm); *United States v. McDonald*, 877 F.2d 91, 93 (D.C. Cir. 1989) (reversing conviction under statute making it unlawful for one to "employ, hire, use, persuade, induce, entice, or coerce" a juvenile to violate the drug laws, where "the jury was never presented with evidence showing that McDonald *knowingly* was responsible for any 'use' of [the minor]" in the drug operation) (emphasis in original). Here, the Government presented evidence that Hite used the Internet to provide Palchak with a photo to show the twelve-year-old girl, which a reasonable jury could conclude was an effort to use the interstate means to have the adult intermediary persuade the girl to engage in sex with Hite. *See Berk*, 652 F.3d at 140; *Lee*, 603 F.3d at 915-17. In addition, the Government's evidence showed that Hite used the telephone to encourage the adult intermediary to perform a sexual act on the three-year-old boy during a webcam session the next day, which a jury could construe as using the interstate means to have the adult intermediary perform a "sexual grooming" activity with the boy, *see United States v. Berg*, 640 F.3d 239, 252 (7th Cir. 2011), with the aim of inducing the boy thereby to engage in sexual activity with Hite.

In this case, the Federal Public Defender, acting as *amicus curiae*, argues that Hite's activities were "mere preparations at most and insufficient to constitute attempt." *Amicus* Br. at 21-22. We need not address the *amicus*'s argument, because Hite has not challenged the sufficiency of the evidence on this ground. Hite's counsel explicitly acknowledged at oral argument, "[W]e are not contending that there is nothing that could possibly be read to constitute an act of persuasion, what I'm suggesting is there is no evidence that the act of persuasion that was intended was an

act of persuasion in the way that the statute requires." Oral Arg. Tr. at 9:6-14; *see also id.* at 32:13-20 (Hite's Counsel: "I think I have not made the argument that the elements of attempt in the . . . abstract have not been satisfied . . . What I have said is that if the statute is construed as we've asked it to be, the evidence is insufficient . . . .").

Although Hite challenges the sufficiency of the evidence against him, this challenge is tied to his contention that the statute requires direct communication with a minor. Because we reject Hite's proposed statutory interpretation and instead hold that communications with an adult intermediary are punishable under § 2422(b) so long as those communications are aimed at transforming or overcoming the minor's will, Hite's evidentiary sufficiency argument necessarily fails.

## III.

Nevertheless, we conclude that Hite's conviction should be vacated and remand for a new trial, because the District Court's jury instructions failed to accurately state the elements of § 2422(b).

We consider jury instructions as a whole in assessing whether they constitute prejudicial error. *See United States v. Norris*, 873 F.2d 1519, 1524-25 (D.C. Cir. 1989); *United States v. Martin*, 475 F.2d 943, 947 (D.C. Cir. 1973). The question of whether reversal is appropriate in any given case must be considered "in light of all the circumstances – the language of the instructions, the arguments of counsel, and the evidence itself." *United States v. Lemire*, 720 F.2d 1327, 1339 (D.C. Cir. 1983). "[I]f these factors cumulatively indicate that it is highly improbable that the jury found the defendants guilty under an improper legal theory, technical errors in the instructions are deemed harmless, and we will affirm." *Id.* On the other hand, "if we conclude that the error

itself had substantial influence – or even if we have grave doubts on this question – the conviction cannot stand." *Norris*, 873 F.2d at 1525 (citing *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

In the case at bar, the jury instructions defining the requisite intent did not fully comport with the interpretation of the statute we announce today. Over defense objection, the District Court instructed the jury that "[d]irect communications with a child" are not necessary for a jury to find a violation of § 2422(b), and that the "government must only prove that the defendant believed that he was communicating with someone who could *arrange* for the child to engage in unlawful sexual activity." J.A. 450-51 (emphasis added). The instructions further provided that "the government must prove only that the defendant intended to persuade, or induce, or entice, or coerce a minor to engage in illegal sexual activity, *or* intended to persuade an adult to *cause* a minor to engage in unlawful sexual activity." J.A. 451 (emphasis added). As discussed *supra*, the preeminent characteristic of the conduct prohibited under § 2422(b) is transforming or overcoming the minor's will, whether through "inducement," "persuasion," "enticement," or "coercion." Although the word "cause" is contained within some definitions of "induce," cause encompasses more conduct; simply "to cause" sexual activity with a minor does not necessarily require any effort to transform or overcome the will of the minor. Similarly, rather than focusing on transforming or overcoming the will of another person, "arrange" means to "put (things) in a neat, attractive, or required order" or to "organize or make plans for (a future event)." OXFORD DICTIONARIES, http://www.oxforddictionaries.com (last visited Oct. 10, 2014). Thus although much of the instruction was correct, the additional language that the "government must only prove

that the defendant believed that he was communicating with someone who could *arrange* for the child to engage in unlawful sexual activity" was erroneous.[6]

The District Court's error was highly prejudicial. Following this flawed instruction, the jury could have convicted the defendant without necessarily finding that he intended to transform or overcome the will of either fictitious minor, so long as they found that he sought to arrange for sexual activity with them. Where the instructions are erroneous, causing grave doubts about whether the jury based its verdict on the proper construction of guilty purpose or intent, a new trial is required. *See Yoder v. United States*, 80 F.2d 665, 668 (10th Cir. 1935) (new trial ordered in prosecution for interstate transportation of a woman for the purpose of prostitution or other immoral purpose (Mann Act), where "[t]he court's charge substituted for the 'purpose' condemned by the statute the 'intent' of defendant" and thus allowed conviction even if "any idea of sexual relations was . . . subsidiary and . . . unrelated to the reasons for the trip"); *Welsch v. United States*, 220 F. 764, 770 (4th Cir. 1915) (new trial ordered in another Mann Act prosecution, where erroneous instruction "did give the jury a misleading impression, in that it left them at liberty to find the defendant guilty . . . if they believed that he had the secret intention of profiting unlawfully by the girl's return, although nothing whatever was said or done by him to persuade or influence her to do so"). Indeed, the prosecutor suggested to the jury in closing argument that Hite could be convicted by proof that he merely arranged to have sex with the fictitious children, rather than by proof he attempted to transform or overcome

---

[6] Although the jury instructions in *Laureys* used the word "arrange," we did not decide whether such an instruction was appropriate. 653 F.3d at 33.

their will, asserting "[i]s there any question that the defendant, from that list [of actions] and others that I'm sure you can think of, took at least one step towards sexual activity with that 12-year-old girl and one step towards sexual activity with that 3-year-old boy[?]" J.A. 819. In light of the substantial influence that the erroneous instructions could have had on the jury, we vacate Hite's conviction and remand for a new trial.

## IV.

Since we remand the case for a new trial, we briefly address those evidentiary rulings that Hite challenges on appeal that are likely to recur on retrial: (1) the District Court's decision to exclude the testimony of Hite's expert witness, Dr. Frederick Berlin; and (2) the District Court's decision to prohibit Hite's counsel from impeaching Detective Palchak during cross-examination. We review both rulings for abuse of discretion. *See United States v. Day*, 524 F.3d 1361, 1369 (D.C. Cir. 2008); *United States v. White*, 116 F.3d 903, 919 (D.C. Cir. 1997).

### *(a) Dr. Berlin's Expert Testimony*

In support of his "fantasy-only" defense, Hite proffered the testimony of Dr. Frederick Berlin, a board certified psychiatrist and founder of the Sexual Behaviors Consultation Unit at the Johns Hopkins University Hospital. J.A. 193. Hite's Rule 16 notice of expert testimony disclosed that Dr. Berlin would testify (1) on "the difference between a desire actually to engage in sexual activity with a minor and mere fantasy and role playing," (the "General Clinical Testimony") J.A. 194, (2) on his diagnosis that Hite does not suffer from any of the psychiatric conditions that are "associated with a desire to have sexual contact with children or that may

predispose an individual to want to engage in sexual activity with a child," (the "Diagnostic Testimony") J.A. 196, and (3) on the relationship between viewing child pornography and sexual interest in children, (the "Child Pornography Testimony") J.A. 195-97. The Rule 16 notice further stated that Dr. Berlin's opinions were based on "his background and experience in the field of psychiatry, his academic and clinical study of sexual behaviors including his examination of hundreds of patients diagnosed with clinical pedophilia, a forensic analysis and diagnosis of Dr. Hite, and a review of the superseding indictment in this case and discovery provided by the government to Dr. Hite." J.A. 193-94.

The Government filed a motion *in limine* to exclude Dr. Berlin's testimony, arguing, *inter alia*, that the proffered testimony was inadmissible under Federal Rules of Evidence 401, 404(a)(1), 704(b), and 403. The District Court granted the Government's motion and excluded the proffered testimony in its entirety. Mem. Op., J.A. 363, Jan. 24, 2013.

Two concerns dominated the District Court's decision to preclude Dr. Berlin's testimony. First, the District Court found that Hite's "opposition brief materially alters his Rule 16 disclosure regarding Dr. Berlin's most significant opinions, often in contradictory ways," and excluded any proffered opinion that it found was not properly disclosed in the Rule 16 notice. J.A. 366. For example, the District Court excluded the Child Pornography Testimony on the ground that Hite's Rule 16 notice did not disclose that Dr. Berlin would testify that viewing child pornography is not associated with a desire to engage in sexual conduct with children. J.A. 384. Similarly, the District Court excluded the General Clinical Testimony on the basis that Hite failed to state the independent relevance of the testimony in the Rule 16 notice. J.A. 383-84.

Second, the District Court concluded that Dr. Berlin's proposed testimony had little probative value because it addressed whether Hite possessed the intent to have sex with children, which is not an element of § 2422(b). While acknowledging that "the issue of the Defendant's desire to have sexual contact with children as a general concept is relevant to the case," the District Court noted that Hite needed not possess the intent to have sex with children in order to form the requisite *mens rea*. J.A. 367. On the other hand, the District Court reasoned that the proposed testimony would confuse the jury as to what intent it must find in order to determine Hite's guilt or innocence. J.A. 380-81.

Expert testimony is admissible under Federal Rule of Evidence 702 if it will assist the jury "to understand the evidence or determine a fact in issue." FED. R. EVID. 702. When determining admissibility under Rule 702, the District Court must ensure that the proffered testimony is both relevant and reliable, and that its evidentiary reliability is based upon scientific validity. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590 & n.9 (1993). In this instance, we conclude that the District Court erred when it excluded Dr. Berlin's testimony in its entirety.

We first address the District Court's finding that certain of Dr. Berlin's proposed testimony must be excluded because Hite failed to comply with the disclosure requirements under Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure. To the extent that the District Court concluded that Hite's Rule 16 notice was deficient because it failed to set forth the relevance of each proposed opinion, *see* J.A. 383, and because this issue could arise on remand, we note that the District Court imposed a burden that goes beyond the scope of Rule 16. Rule 16(b)(1)(C) requires the defendant to provide, at the

government's request, "a written summary of any testimony the defendant intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence as evidence at trial," if the defendant has given notice of an intent to present expert testimony on the defendant's mental condition. FED. R. CRIM. P. 16(b)(1)(C). While Rule 16 requires the defendant to "describe the witness's opinions, the bases and reasons for these opinions, and the witness's qualifications," *id.*, it does not require the defendant to explain the basis of the proposed opinion's admissibility in his notice, and requiring explanation of legal basis goes far beyond the purpose of the rule. *See* FED. R. CRIM. P. 16 advisory committee's note to 1993 amendments (the purpose of Rule 16(b)(1)(C) is "to minimize surprise that often results from unexpected expert testimony"); *Day*, 524 F.3d at 1372.

Turning to the substance of Dr. Berlin's proposed testimony, we note at the outset that both parties viewed the issue of whether Hite possessed a sexual interest in children as crucial, and the District Court acknowledged that, "[w]hether or not the Defendant is sexually attracted to children, though not necessarily dispositive, is *relevant* to the broader question of whether, based on all of the evidence presented to the jury, the Defendant intended to entice or coerce the fictitious minors to engage in illicit sexual activity." Mem. Op. at 7, J.A. 326 (emphasis in original). Indeed, the Government began its closing argument by highlighting Hite's sexual interest in children and arguing to the jury that "[w]e're here because of the interest, interest in sexual activity with minors, a girl and a boy. Interest of the defendant, Paul David Hite." J.A. 814. On appeal, the Government concedes that Hite's sexual interest in children is probative of his intent. Appellee Br. at 46-47; *see also* Oral Arg. Tr. at 24:14-17.

The central focus of Hite's defense was that he was a fantasist with no real sexual interest in children. Because the District Court determined that Hite's sexual interest in children was relevant to the question of whether he had the requisite intent with respect to 18 U.S.C. § 2422(b), Hite should have been permitted to introduce the Diagnostic Testimony and the Child Pornography Testimony so that he could seek to demonstrate to the jury that he did not possess such an interest. *See United States v. Gladish*, 536 F.3d 646, 650-51 (noting that the district court should have permitted the defendant's expert to testify "that it was unlikely, given the defendant's psychology, that he would act on his intent").[7] On remand, the District Court should allow Hite to introduce Dr. Berlin's testimony that Hite is not sexually interested in children. *See United States v. Cohen*, 510 F.3d 1114, 1127 (9th Cir. 2007) (improper exclusion of expert testimony not harmless where central to the defense). If the District Court finds upon remand that the proposed testimony poses a risk of confusing the jurors as to the relevant *mens rea* in the case, it has discretion to consider whether to mitigate such a threat through limiting instructions, as it did with respect to the prior

---

[7] The District Court relied on the Ninth Circuit decision in *United States v. Hofus*, 598 F.3d 1171, 1179 (9th Cir. 2010), in which the Ninth Circuit upheld the district court's exclusion of the proffered expert testimony that the defendant was not a pedophile. Significantly, in *Hofus* the district court permitted the expert to testify that the defendant "was not a hebophile [having an abnormal sexual interest in youthful women with some secondary sexual characteristics]," and also allowed him to "testif[y] extensively about the large number of people who engage in sexual texting or chat rooms for pure fantasy," *id.* at 1180, while no similar testimony was permitted here. We do not suggest such testimony would be admissible only for the two purposes identified by the district court in *Hofus.*

bad acts evidence that the Government introduced at trial.[8] *See* J.A. 434-45; *United States v. Long*, 328 F.3d 655, 662 (D.C. Cir. 2003).

Likewise, we find that the General Clinical Testimony should have been admitted, because it can shed light on what may be an unfamiliar topic to most jurors: sexual fantasy involving children, particularly the kind that unfolds in the virtual realm of the Internet. The District Court acknowledged that the concept of Internet-based sexual fantasy may be new to many jurors. Mem. Op. at 9, J.A. 371. While Dr. Berlin may not testify that Hite lacked the requisite intent, *see* FED. R. EVID. 704(b), expert testimony that generally explains the world of sexual fantasy on the Internet is permissible. *See United States v. Joseph*, 542 F.3d 13, 21 (2d Cir. 2008) (urging the district court to "give a more thorough consideration" to the defendant's request to present expert testimony regarding "a distinct culture of the Internet in which one can become a 'fantasy character'"), *abrogated on other grounds by United States v. Ferguson*, 676 F.3d 260 (2d Cir. 2011); *United States v. Curtin*, 588 F.3d 993, 997-98 (9th Cir. 2009) (the district court permitted the expert testimony concerning "the role of fantasies in sexual behavior and . . . that many people fantasize about things they would never do in actuality").

---

[8] The Government was permitted under Rule 404(b) to introduce evidence of Dr. Hite's prior bad acts evincing a sexual interest in children, including (1) evidence of Hite allegedly accessing child pornography on his laptop computer, and (2) evidence of Hite's Internet communications with adults other than J.P., in which he discussed illicit sexual activities with minors. *See* Mem. Op., J.A. 320, Jan. 13, 2013. The District Court ruled the evidence "probative of his intent to entice or coerce the fictitious minors in this case." *Id.* at 6, J.A. 325.

*(b) Cross-examination of Detective Palchak.*

We next turn to Hite's argument that the District Court improperly prohibited defense counsel from impeaching Detective Palchak with prior testimony.

At trial, defense counsel asked Palchak if he believed that "when a person leaves their computer and gets up and walks out the door to come meet an individual that's when the fantasy ends," apparently trying to argue that the fact Hite never travelled to meet J.P. and the fictitious minors supports the contention that he was a mere fantasist. S.A. 293. When Palchak responded, "that's a complex question to answer," *id.*, defense counsel sought to impeach him with prior testimony that he had given in *United States v. Beauchamp-Perez*, No. 11-310 (D.D.C. Oct. 19, 2011), and *United States v. Nitschke*, No. 11-138 (D.D.C. Jan. 17, 2012).

In *Beauchamp-Perez*, defense counsel asked Palchak "isn't it true that when people are talking about fantasy, if you say this is not fantasy, it doesn't necessarily mean it's not fantasy?" J.A. 509. Palchak responded, "I think by the statements that I said there about using the other guy as an example that he flaked out when he saw a 12-year-old in combination with the numerous times that I told him that 'if 12 is too young' and 'you and I can hook up alone,' once a person leaves his computer, especially after 24 hours, leaves his computer and walks out the door to hop on the Metro anywhere else, the fantasy ends." *Id.* Subsequently, in *Nitschke*, Palchak was asked about his testimony in *Beauchamp-Perez*, namely, whether if he had previously testified that "while someone travels down to meet you fantasy time is over." He answered, "Sounds like that's something I would have testified to." J.A. 513.

The District Court ruled that Hite could not introduce Palchak's prior testimony on the grounds that Palchak's response in *Beauchamp-Perez* was specific to the facts of the case, and the defendant in *Beauchamp-Perez* was charged with travel under 18 U.S.C. § 2423(b), not enticement under § 2422(b). J.A. 509; S.A. 301-04. Palchak's testimony in *Nitschke* did no more than refer to his previous testimony in *Beauchamp-Perez*, and was therefore barred for the same reason. S.A. 311.

The District Court enjoys broad discretion to control cross-examination. *United States v. Lin*, 101 F.3d 760, 767 (D.C. Cir. 1996); *Harbor Ins. Co. v. Schnabel Found. Co.*, 946 F.2d 930, 935 (D.C. Cir. 1991). It may disallow cross-examination that is repetitive, irrelevant, unduly prejudicial, collateral to the issues in the trial, or outside the scope of direct examination. *Harbor*, 946 F.2d at 935. Although district courts should exercise caution in limiting the cross-examination of matters concerning a witness's credibility, *see United States v. Pryce*, 938 F.2d 1343, 1345 (D.C. Cir. 1991), we have declined to find an abuse of discretion where it is unlikely that "[a] reasonable jury might have received a significantly different impression of [the witness'] credibility" even with further questioning. *United States v. Davis*, 127 F.3d 68, 70-71 (D.C. Cir. 1997) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)) (internal quotation marks omitted); *see also United States v. Fonseca*, 435 F.3d 369, 375 (D.C. Cir. 2006) ("trial courts are afforded considerable leeway in deciding whether to admit" collateral evidence). Here, the District Court's ruling was not an abuse of discretion.

The District Court concluded that Palchak's prior testimony presented a risk of suggesting to the jury that travel is one of the elements of the crime at issue. *See, e.g.*, S.A.

295. The District Court additionally found that the prior testimony was confined to the context of a specific individual who "flaked out" when he saw a twelve-year-old girl, S.A. 306; J.A. 509, and that the prior testimony could only be fairly understood in the context of the specific chats that had taken place in those two prior, unrelated cases. S.A. 310-13. Furthermore, even though Palchak testified that leaving the computer and traveling to meet someone demonstrates that the fantasy is over, this statement does not imply that everything that happens at the computer is merely fantasy, so the District Court ruled that the prior testimony was not necessarily inconsistent with his testimony at Hite's trial, weakening its impeachment value and increasing the potential for jury confusion. *Id.* These were sufficient bases for the District Court's decision to disallow the use of Palchak's prior testimony, as the District Court "must be persuaded that the statements are indeed inconsistent" prior to allowing impeachment, *United States v. Hale*, 422 U.S. 171, 176 (1975), and the ruling is sustainable given the "broad discretion" we must give to the District Court's Rule 403 balancing of probative value versus prejudice and assessment of potential for jury confusion. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). Accordingly, we find no error in the District Court's decision to prohibit the impeachment of Detective Palchak.

## V.

Lastly, we turn to Hite's request for reassignment. As Hite's counsel conceded at oral argument, we grant such requests "only in extraordinary cases." *Cobell v. Kempthorne*, 455 F.3d 317, 331 (D.C. Cir. 2006) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)); Oral Arg. Tr. at 31:4-8. Although we find that the District Court erred,

this case does not present the type of extraordinary circumstances warranting a reassignment order.

Hite contends that reassignment is appropriate because the District Court "established a disconcerting pattern of ruling" against him "on evidentiary and instructional issues, often without any plausible justification and frequently on grounds not even the government could bring itself to advance." Appellant Br. at 53. While judicial rulings can be evidence of prejudice in certain instances, *United States v. Barry,* 938 F.2d 1327, 1340 (D.C. Cir. 1991), unfavorable judicial rulings alone almost never constitute a valid basis for reassignment. *See Liteky,* 510 U.S. at 555; *see also United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995) (per curiam) ("That a judge commits error, of course, is by itself hardly a basis for imputing bias or even the appearance of partiality.").

Here, we are not persuaded upon review of the record that the District Court's evidentiary and instructional rulings demonstrate impermissible partiality. This case is a far cry from *Cobell*, on which Hite relies, where we ordered reassignment because repeated reversals, combined with the district court's professed hostility toward one of the parties and its failure to act as an impartial arbiter on several occasions, raised concerns regarding the district court's ability to render fair judgment. *See Cobell*, 455 F.3d at 334-35. Neither are we persuaded the combined effect of the District Court's rulings is sufficient to cause a reasonable observer to question whether the judge "would have difficulty putting [their] previous views and findings aside on remand," *Microsoft*, 56 F.3d at 1465. Accordingly, Hite's request for reassignment is denied.

## VI.

For the foregoing reasons, we vacate the judgment of conviction and remand the case for a new trial.

*So ordered.*