COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:    Judges Huff, Russell and Malveaux
Argued by videoconference


STEPHEN JAMES KILPATRICK

                                                                  OPINION BY
v.        Record No.  2043-19-3                        JUDGE GLEN A. HUFF
                                                                  MAY 4, 2021

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Gregory M. Lipper (Timothy R. Clinton; Clinton & Peed, on
briefs), for appellant.

Craig W. Stallard, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Among the tools available to parties in a criminal trial is the use of expert testimony to

assist the jury's understanding of the evidence and its resolution of facts at issue.  To be sure,

that right comes with certain limitations, many of which serve to guarantee that an expert's

testimony does not express opinions on issues entrusted exclusively to the jury for its own

consideration, such as the defendant's mental state at the time of the alleged offense and,

ultimately, whether the defendant is guilty.  But so long as a party's experts do not violate these

limiting principles, they have substantial latitude in terms of the relevant information they may

present.

In this appeal, Stephen J. Kilpatrick ("appellant") contends the Bedford County Circuit

Court (the "trial court") unduly restricted his ability to offer expert testimony which he believes

was crucial to his defense.  Prior to being convicted by a jury on multiple counts of computer

solicitation of a minor, appellant attempted to offer expert testimony from a forensic

psychologist who would have testified that, after conducting a psychological evaluation of appellant, he concluded appellant was not a pedophile.  Appellant sought this testimony to support his argument that he did not believe that the person with whom he engaged in electronic communications was a minor and to show that he lacked a motive to solicit a minor.  The trial court barred this testimony, ruling that it would amount to an expression of an opinion on an ultimate issue of the case and thereby invade the exclusive province of the jury.  Because the trial court's ruling was erroneous and prejudicial, this Court reverses appellant's convictions and remands the case for a new trial.

## I.  BACKGROUND

Appellant was caught in a sting operation, beginning when Investigator Jake Wade of the Bedford County Sheriff's Office set up a fake profile under the name "Jenny Block" on Craigslist.org.  On November 15, 2017, "Jenny" posted in a "hook-up area" on Craigslist designated for "casual encounters" and used the abbreviation "W4M," which was understood to mean "woman for man."  In that post, Jenny described herself as a student in Lynchburg who was looking for "any suggestions" as to "what there was to do" around the city.

Roughly a week later, appellant responded to Jenny's post and, among other things, requested that she "pull up [her] shirt" and watch him masturbate.[1]  Although Jenny did not oblige his request, she asked that appellant tell her more about himself.  After a short period of small talk between the two, appellant asked Jenny what she was studying, to which she responded, "I guess you could say I'm studying general studies."  Jenny then asked appellant whether he would "be okay with [her] being a little younger than [him]," and appellant responded in the affirmative.

---

[1] Appellant acted under the pseudonym "David Dundall" when communicating with Jenny.

At this point, Jenny had not relayed her specific age to appellant. She had, however, told appellant she occasionally drove a vehicle by appellant's place of employment, Liberty University, an activity legally reserved for persons at least fifteen years and six months of age. In addition, appellant had asked Jenny what high school she attended. Jenny did not provide a specific response to that question, but instead told him she went to a school in Bedford County.

On December 15, 2017, Jenny gave her first indication of her age, telling appellant she was thirteen years old. At some point prior to this disclosure, appellant had made the comment that "older guys know how to please a girl." When Jenny asked appellant what he meant by that, appellant responded the next day with the following message:

> So here's what I think about high school buys [sic] versus older men. I think when boys in high school when they get horny they don't really understand their own body and don't know anything about girls . . . . They don't know really what girls like or don't like . . . . They can only think about their penis, LOL, and can't control themselves and just cum . . . . That's what I remember when I was in high school, LOL. I can tell you stories about what I did with girls in high school if you want, haha . . . [b]y now I've been with enough girls that I know a lot. Although, every girl is different. So you always have to ask a girl what they like to be sure. I know the girls - - that girls get aroused more slowly and they like lots of attention to get them ready to cum . . . .

Beginning on January 4, 2018, Jenny and appellant moved their communications from the Craigslist email format to personal email and text messaging at Jenny's request (Investigator Wade hoped to "further the investigation" and trace the email address and phone number appellant provided to a specific suspect). The two continued to engage in sexually explicit conversation for the next couple of months, and in those conversations, appellant made occasional reference to Jenny's stated age. Specifically, appellant told Jenny she had "a pretty thirteen Y.O. body with growing curves." He further remarked that Jenny was "[n]o ordinary 8th grader, baby!" and said, "if I get this excited when you're thirteen how excited will you get me when you're sixteen?"

- 3 -

Following appellant's sexually explicit comments and repeated references to Jenny's stated age, Investigator Wade began constructing a plan for a takedown operation. He first used the email address and phone number provided by appellant to obtain a return on an administrative subpoena, which in turn led him to a residence in Forest, Virginia. He then perused a number of messages appellant had sent that indicated appellant drove a blue Honda Civic as well as other messages which described appellant's physical appearance. Upon conducting surveillance of the residence, Investigator Wade observed that a person matching appellant's stated physical appearance lived in the residence and drove a blue Honda Civic.

Once appellant became the primary suspect of the investigation, Jenny asked him to meet her in person at Cloverhill Boulevard in Bedford County, which was designated by law enforcement as the takedown site. The two agreed to meet at that location on June 27, 2018 at 4:00 pm. Jenny also requested that appellant go to Walmart beforehand and buy her some cookies. Appellant agreed to do so and further indicated he would bring lubricant to the site.

Around 3:30 pm on June 27, Investigator Wade was stationed at the Walmart closest to the takedown site and observed a blue Honda Civic pull into the parking lot. He then saw appellant emerge from the vehicle, enter the store, and then return to the vehicle with a white plastic bag in hand. From there, appellant drove to the takedown site and was confronted by Investigator Wade and other members of law enforcement. Upon Investigator Wade's request, appellant agreed to be taken to a local police station for questioning.

During the interview, Investigator Wade asked appellant why he showed up to the takedown location at Cloverhill Boulevard. Although appellant initially stated he was delivering items to a girl named Jenny who "told him that she was fourteen years old," appellant subsequently maintained that Jenny "seems a lot older than thirteen" and that he was "not looking for someone underage." After admitting to sending sexually explicit messages to Jenny,

appellant further remarked that Jenny "was able to communicate" like someone much older than a thirteen year old and that "there's no way [someone of Jenny's purported age] speaks" in the way she did to him.[2]

Appellant repeatedly asked Investigator Wade whether Jenny was a real person. Investigator Wade falsely told appellant Jenny was real and had complained to the police of appellant's behavior. He then encouraged appellant to write "an apology letter" to Jenny's parents to "help[] bring closure to the family." Appellant obliged and wrote a brief note which said:

> Dear Parent,
>
> I wanted to express my remorse for my inappropriate texting with your daughter. I give you my word that it will never happen again.
>
> Sincerely,
> Dave[.]

Appellant was placed under arrest and indicted for multiple counts of computer solicitation of a minor in violation of Code § 18.2-374.3(C), which reads, in pertinent part:

> It is unlawful for any person 18 years of age or older to use a communications system . . . for the purposes of soliciting, with lascivious intent, any person he knows or has reason to believe is a child younger than 15 years of age to knowingly and intentionally:
>
> 1. Expose his sexual or genital parts to any child to whom he is not legally married or propose that any such child expose his sexual or genital parts to such person;
>
> 2. Propose that any such child feel or fondle his own sexual or genital parts or the sexual or genital parts of such person or propose that such person feel or fondle the sexual or genital parts of any such child;
>
> 3. Propose to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361; or

---

[2] The record is not clear as to why appellant first told Investigator Wade that Jenny told him that she was "fourteen" but then later expressed disbelief that she could be "thirteen."

4. Entice, allure, persuade, or invite any such child to enter any vehicle, room, house, or other place, for any purposes set forth in the preceding subdivisions.

At trial, appellant pursued an entrapment defense, argued he had no intent to solicit a minor, and maintained that he at no point believed Jenny was a minor.[3] He further claimed that whenever he referenced Jenny's age while engaging in sexual conversation, he was taking part in a role-playing "fantasy" as a "way to blow off steam or have [a] diversion" from his work and home-related stress. Specifically, he asserted that the "fantasy" was one where he thought Jenny shifted her sexual "persona" and pretended to play the part of a young schoolgirl and that he never understood her to make a literal claim as to her age in real life.

To advance his defense, appellant sought to introduce expert testimony from Dr. Maurice Fisher, a forensic psychologist and certified sex-offender evaluator. Dr. Fisher psychologically evaluated appellant and determined that appellant did not meet the diagnostic criteria of a pedophile.[4] Through Dr. Fisher's testimony, appellant sought to show that he lacked a motive to solicit a minor, to support his contention that he did not believe Jenny was a minor, and to show that he was not "predisposed" to soliciting minors—a consideration relevant to his entrapment defense. Appellant assured the trial court that Dr. Fisher would not offer any opinion on appellant's mental state at the time he was alleged to have committed the offenses.

Upon the Commonwealth's objection, the trial court excluded the proffered testimony from Dr. Fisher. The trial court ruled that Dr. Fisher's testimony would constitute an opinion on appellant's intent and thus would violate Virginia's prohibition against expert opinion on the "ultimate issues" of a criminal case.

_____

[3] For the sake of simplicity, this opinion uses the word "minor" to describe persons younger than fifteen years old given that the statute at issue prohibits solicitation of children "younger than 15 years of age."

[4] This type of testimony is sometimes referred to as "profile" evidence.

Appellant was ultimately convicted of three counts of computer solicitation of a minor, first offense, and two counts of computer solicitation of a minor, second offense. For those convictions, he was sentenced to thirty-five years' incarceration with no time suspended.

This appeal followed.

## II. STANDARD OF REVIEW

The decision whether to admit or exclude expert testimony is one left to the sound discretion of the trial court, and this Court will reverse only upon a showing that the trial court abused its exercise of that discretion. Commonwealth v. Allen, 269 Va. 262, 274 (2005). While the abuse of discretion standard generally requires a deferential posture from this Court, it is nonetheless this Court's duty to ensure the trial court "was not guided by erroneous legal conclusions" in exercising its discretion. Porter v. Commonwealth, 276 Va. 203, 260 (2008) (quoting Koons v. United States, 518 U.S. 81, 100 (1996)).

At the core of appellant's assignment of error is the assertion that the trial court's exclusion of his expert witness was a "legal error" guided by a misapprehension of the law of evidence. Thus, to the extent this appeal requires interpretation of the common law, the Virginia Rules of Evidence, and the Virginia Criminal Code, it presents a question of law this Court reviews *de novo*. Hicks v. Commonwealth, 71 Va. App. 255, 276 (2019) ("[T]o the extent [an] admissibility determination involves a question of law, we review that issue *de novo*." (citing Beckham v. Commonwealth, 67 Va. App. 654, 658 (2017))); see also Commonwealth v. Greer, 63 Va. App. 561, 568 (2014) (stating that interpretation of the common law presents a legal question "reviewed *de novo* on appeal").

III. ANALYSIS

Appellant contends Dr. Fisher's testimony was admissible for two purposes: (1) to show support for his claim that he did not believe Jenny was a minor, and (2) to show he lacked a "motive" to solicit a minor. He further asserts that because Dr. Fisher's testimony would not have expressed an opinion on his mental state at the time of the alleged offenses, it would not have violated the prohibition against expert opinion on the "ultimate issues" of a criminal case. The Commonwealth shares the trial court's view that Dr. Fisher's testimony would have gone to the ultimate issues of appellant's intent, mental state, and guilt and thereby would have invaded the province of the jury.

On this evidentiary point, this Court agrees with appellant. Unlike most sex crimes in Virginia involving victims who are minors, Code § 18.2-374.3 expressly conditions a defendant's guilt on his knowledge of the victim's age.[5] By testifying that appellant did not meet the diagnostic criteria of a pedophile, Dr. Fisher would have provided information that could have aided the jury's determination of appellant's claim that he did not believe Jenny to be a minor and that he was not motivated to seek minors. And appellant proffered that Dr. Fisher would testify without expressing any opinion on appellant's specific beliefs or mental state at the time he was alleged to have committed the offenses. The ultimate determination of appellant's guilt, therefore, would have rested solely with the jury and not with Dr. Fisher's opinion. Accordingly, the trial court erred in excluding Dr. Fisher's testimony on the basis that it would have been expert opinion on an ultimate issue.

---

[5] While irrelevant to the analysis of this opinion, it bears mentioning that, as was true here, there need not be an actual victim in order to secure a conviction under Code § 18.2-374.3.

- 8 -

A.

Generally, a litigant is "entitled to introduce all competent, material, and relevant evidence tending to prove or disprove any material issue raised, unless the evidence violates a specific rule of admissibility." Lee v. Commonwealth, 68 Va. App. 313, 318 (2017) (internal citation and quotation marks omitted). Evidence is "relevant" so long as it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401.

In criminal cases, however, neither the defendant nor the Commonwealth may introduce opinion testimony on the "ultimate issues" of the case. Va. R. Evid 2:704(b) ("In criminal proceedings, opinion testimony on the ultimate issues of fact is not admissible."); see also Knick v. Commonwealth, 15 Va. App. 103, 108 (1992) ("It is well settled in Virginia that an expert witness is not permitted to express an opinion as to an ultimate fact, a matter that must be determined by the trier of fact."). What constitutes an "ultimate issue" in a criminal trial is determined on a case-by-case basis, depending on the nature of the crime and its constituent elements. Bowman v. Commonwealth, 30 Va. App. 298, 303 (1999) ("'Ultimate issues of fact' for purposes of the conviction of a crime are the statutory elements of that offense.").

It has long been understood that an expert does not violate the ultimate issue rule simply because his or her testimony bears relevance to an ultimate issue. Zook v. Commonwealth, 31 Va. App. 560, 566 (2000) ("[T]he mere fact that an expert's testimony tends to prove an ultimate fact in issue does not preclude the witness from testifying on a subject."). Instead, the expert's testimony must express a *direct* opinion on an ultimate issue in order to run afoul of the rule. Compare Llamera v. Commonwealth, 243 Va. 262, 264-66 (1992) (holding expert violated ultimate issue rule where he testified that quantity of cocaine possessed by defendant "would suggest" the defendant "was a person who sold cocaine"), and Cartera v. Commonwealth, 219

- 9 -

Va. 516, 518-19 (1978) (holding expert violated ultimate issue rule where he testified victims in rape prosecution "had been raped"), with Davis v. Commonwealth, 12 Va. App. 728, 732 (1991) (holding expert testimony "did not constitute an opinion" on an ultimate issue where the expert opined that possessing "6.88 ounces [of marijuana] was inconsistent with an individual's personal use"), and Hussen v. Commonwealth, 257 Va. 93, 99 (1999) (holding that expert's testimony was "not a comment on one of the ultimate issues" where the expert opined that "the unique nature of the victim's laceration, particularly the location of the injury, was not *consistent* with consensual, first time intercourse").

Applying those principles here, this Court determines that Dr. Fisher's proffered testimony did not express a direct (or even an indirect) opinion on any of the ultimate issues at trial. The ultimate issues in this case were three-fold: (1) whether appellant's conduct amounted to "solicitation," (2) whether appellant acted with lascivious intent, and (3) whether appellant believed Jenny was a minor.[6] The first two ultimate issues are not genuinely in dispute. The Commonwealth argues Dr. Fisher's testimony went to the ultimate issue of appellant's "lascivious intent," but that contention is not borne out in the context of the case. By appellant's own concession, he had a "lascivious" intent when communicating with Jenny—as he put it, the two "were talking about sex, not sports or politics." Moreover, appellant does not argue (nor could he) that Dr. Fisher's testimony could be used to show his actions did not amount to "solicitation" under the criminal law. Instead, the third of this case's ultimate issues is the only issue Dr. Fisher's testimony would bear upon—i.e., whether appellant believed he was communicating with a minor.

---

[6] With the text of Code § 18.2-374.3 in mind, this opinion's use of the words "belief" and "believed" is intended to encompass the allegation that appellant "knew" *or* "had reason to believe" Jenny was a minor. But see infra at 18-19 (noting that the nature of the statute's *mens rea* requirement is an open question in Virginia law).

By testifying that appellant did not meet the diagnostic criteria of a pedophile, Dr. Fisher would have provided information that would be relevant to understanding appellant's belief as to Jenny's age at the time of the alleged offenses. But he would not have expressed any opinion on appellant's mental state when he was communicating with Jenny, and thus would not have invaded the province of the jury in determining appellant's guilt or innocence.

That Dr. Fisher's testimony was within the permissible scope of the ultimate issue rule becomes even clearer when considering the sorts of expert testimony deemed admissible in other contexts. Consider first Virginia's precedent on the scope of appropriate expert opinion when a defendant is charged with possession with intent to distribute. In that scenario, the ultimate issue is, of course, whether the defendant intended to distribute the controlled substance in his possession. Davis, 12 Va. App. at 732 ("[T]he ultimate issue for the jury [is] whether Davis intended to distribute the marijuana . . . ."). Nonetheless, this Court has long permitted the Commonwealth to procure expert witnesses who opine that the given quantity of a controlled substance possessed by a defendant is "inconsistent with personal use," which by reasonable inference means the quantity is consistent with an intent to distribute. See, e.g., Williams v. Commonwealth, 52 Va. App. 194, 204 (2008) ("It was not unreasonable for the trial court to accept [expert] opinion that [defendant's] possession of cocaine was inconsistent with personal use."); Askew v. Commonwealth, 40 Va. App. 104, 110 (2003) ("[T]he Commonwealth may introduce opinion testimony from law enforcement officers familiar with the habits and propensities of local drug users as to what amounts are inconsistent with personal use.").

Or consider the permissible scope of expert testimony when a defendant is charged with rape. In a prosecution for rape, one of the ultimate issues is whether the intercourse between the defendant and the complaining witness was consensual or against the witness' will. Hussen, 257 Va. at 99. Similar to the possession with intent to distribute context, the Commonwealth is

permitted to procure expert examination of the complaining witness and have the expert testify that certain markings or wounds on the witness' anatomy are "not consistent with consensual intercourse." Id.

The testimony in both of these scenarios, while admissible, certainly comes close to the realm of opinion on ultimate issues. See Davis, 12 Va. App. at 732 ("[W]e acknowledge that the distinction between [testimony from an expert that the amount of drugs possessed by Davis was inconsistent with personal use], and the ultimate issue for the jury whether Davis intended to distribute the marijuana, is a narrow one."). Yet, because the nature of this testimony is implicit and indirect—that is, it comes short of expressing a direct opinion on an ultimate issue—it does not invade the province of the jury. Because Dr. Fisher's testimony also comes short of opining directly on an ultimate issue, it too does not violate the ultimate issue rule.[7]

---

[7] Also noteworthy is the fact that the second sentence of Rule 2:704(b) recognizes a relevant exception to the ultimate issue rule:

> This Rule does not require exclusion of otherwise proper expert testimony concerning a witness' or the defendant's mental disorder and the hypothetical effect of that disorder on a person in the witness' or the defendant's situation.

Historically, the "mental disorders" encompassed within this exception have been broad, including post-traumatic stress disorder, mild mental retardation, and even a mind under the cumulative influence of LSD, benzodiazepines, and alcohol. See, e.g., Fitzgerald v. Commonwealth, 270 Va. 596, 601-04 (2007); Conley v. Commonwealth, 273 Va. 554, 560-63 (2007); Pritchett v. Commonwealth, 263 Va. 182, 185-88 (2002); Fitzgerald v. Commonwealth, 223 Va. 615, 629-31 (1982). And so long as the expert testifying on these disorders does not directly opine on whether a defendant could have formed the requisite intent or mental state at the time of the offense, the expert may discuss the nature of the disorders and the general effect they could have on hypothetical persons in the defendant's situation.

If an expert is permitted to testify on the hypothetical effect a "mental disorder" would have on a person in a defendant's circumstances, it logically follows that an expert would likewise be permitted to testify on the inverse: that is, the hypothetical effect that a *lack* of a particular disorder would have on a person in a defendant's situation. Thus, Dr. Fisher's testimony on appellant's lack of pedophilia would not just be permissible under the ultimate issue rule, it would actively be *encompassed* by Rule 2:704(b)'s exception to the rule.

This conclusion finds additional support in the approaches taken by federal courts addressing the scope of admissible expert testimony in prosecutions under 18 U.S.C. § 2422(b).[8] Similar to Code § 18.2-374.3, the federal statute criminalizes the use of "mail or any facility or means of interstate or foreign commerce" to sexually entice a person believed by the defendant to be under eighteen years of age. See, e.g., United States v. Roman, 795 F.3d 511, 515 (6th Cir. 2015); United States v. Meek, 366 F.3d 705, 722 (9th Cir. 2004). Where a defendant charged under that statute seeks to elicit expert testimony relating to the defendant's sexual profile to bolster a "fantasy only" defense, courts routinely permit them to do so. See, e.g., United States v. Hite, 769 F.3d 1154, 1168-70 (D.C. Cir. 2014) (expert testimony held admissible where expert opined that defendant did not possess the psychiatric conditions of a person who desired to have sexual contact with children); United States v. Gladish, 536 F.3d 646, 650-51 (7th Cir. 2008) (Posner, J.) (expert testimony held admissible where expert opined that defendant possessed a "character pathology" where defendant preferred to fulfill "sexual gratification in Internet chat rooms" instead of seeking actual intercourse).

The rationale of the federal courts is based on the distinction between testimony that expresses an opinion on a defendant's mental state at the time of the offense (improper) and testimony that simply has relevance to that issue (proper). Compare United States v. Hofus, 598 F.3d 1171, 1177-80 (9th Cir. 2010) (expert testimony inadmissible where expert opined that defendant was merely acting out a fantasy at the time of the offense), with Hite, 769 F.3d at 1168-70 (expert testimony on defendant's sexual profile admissible where it did not express

Nonetheless, appellant did not raise this argument in the trial court or on appeal, and reliance on it is not necessary for this Court to conclude the trial court erred here.

[8] Although Federal Rule of Evidence 704 eliminated the "ultimate issue" rule in many respects, it still preserved the aspect of the rule which prohibits expert opinion "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Case law from federal courts is therefore instructive here.

- 13 -

opinion on defendant's mental state at the time of the offense).  In other words, those courts maintain that even though an expert may not offer an opinion "on the defendant's intent" or other mental state at the time of the alleged offense, the expert may nonetheless "give testimony that 'supports an obvious inference with respect to the defendant's state of mind if that testimony does not actually state an opinion on [the] ultimate issue, and instead leaves this inference for the jury to draw.'"  United States v. Stahlman, 934 F.3d 1199, 1220 (11th Cir. 2019) (quoting United States v. Augustin, 661 F.3d 1105, 1123 (11th Cir. 2011)).

To the extent other jurisdictions have rejected the introduction of profile evidence in the context of sex crimes—as well as this Court in an unpublished case[9]—they did so in cases where the defendant was charged with varying forms of sexual assault, sexual battery, or rape.  See, e.g., Cipolla v. Commonwealth, No. 1976-17-2, at *1, 4-7 (Va. Ct. App. June 18, 2019) (defendant convicted of indecent liberties with a minor, forcible sodomy, and aggravated sexual battery); State v. Walker, 433 P.3d 202, 204-05, 209-15 (Mont. 2018) (defendant convicted of incest and sexual assault); State v. Hulbert, 481 N.W.2d 329, 330-33 (Iowa 1992) (defendant convicted of sexual assault); Pendleton v. Commonwealth, 685 S.W.2d 549, 551, 553-54 (Ky. 1985) (defendant convicted of first-degree rape and first-degree sodomy); State v. Campbell, 904 S.W.2d 608, 610-11, 616 (Tenn. Crim. App. 1995) (defendant convicted of aggravated sexual battery); Gilstrap v. State, 450 S.E.2d 436 (Ga. Ct. App. 1994) (defendant convicted of rape and child molestation); People v. Edwards, 586 N.E.2d 1326, 1328, 1330-31 (Ill. App. Ct. 1992) (defendant convicted of aggravated sexual assault); State v. Elbert, 831 S.W.2d 646, 647-48 (Mo. Ct. App. 1992) (defendant convicted of first-degree sexual abuse and sodomy); People v. Berrios, 568 N.Y.S.2d 512, 513-14 (N.Y. Sup. Ct. 1991) (defendant

---

[9] "Unpublished opinions, of course, have no precedential value and thus do not implicate the interpanel accord doctrine."  Brandau v. Brandau, 52 Va. App. 632, 639 n.2 (2008).

convicted of first-degree rape and first-degree sexual abuse); State v. Armstrong, 587 So.2d 168, 170 (La. Ct. App. 1991) (defendant convicted of forcible rape); State v. Person, 564 A.2d 626, 628, 631-32 (Conn. App. Ct. 1989) (defendant convicted of second-degree sexual assault and risk of injury to a child); State v. Gallup, 779 P.2d 169, 170, 171-72 (Or. Ct. App. 1989) (defendant convicted of first-degree sodomy); State v. Fitzgerald, 382 N.W.2d 892, 893-95 (Minn. Ct. App. 1986) (defendant convicted of second-degree criminal sexual conduct and aiding first-degree criminal sexual conduct); Williams v. State, 649 S.W.2d 693, 694-96 (Tex. Ct. App. 1983) (defendant convicted of indecency with a child).

Unlike the statute appellant was charged with violating here, those crimes involved actual or attempted physical contact with a minor.[10] This is a distinction with a difference. Under Virginia law, where sexual crimes involve actual or attempted physical contact with a minor, a defendant's knowledge of the victim's age need not be shown in order to prove the defendant's guilt. See, e.g., Code § 18.2-61 (criminalizing rape against any victim "under age 13"); Code § 18.2-63 (criminalizing carnal knowledge of any "child thirteen years of age or older but under fifteen years of age"); Code § 18.2-67.1 (criminalizing forcible sodomy against any victim who "is less than 13 years of age"); Code § 18.2-67.4 (criminalizing sexual abuse against any "child 13 years of age or older but under 15 years of age"); Code § 18.2-371 (criminalizing consensual intercourse with any "child 15 or older"); see also Rainey v. Commonwealth, 169 Va. 892, 894-95 (1937) (holding that defendant's knowledge of victim's age was not an element of attempted statutory rape where statute did not explicitly so provide); Att'y Grievance Comm'n v. Childress, 770 A.2d 685, 692 (Md. 2001) ("[S]tatutory rape in Virginia . . . does not require

---

[10] The act of solicitation is not an "attempt" in the legal sense of the word. Hicks v. Commonwealth, 86 Va. 223, 229 (1889); see also Brooker v. Commonwealth, 41 Va. App. 609, 614 (2003) ("[T]he act of solicitation may be completed before any attempt is made to commit the solicited crime." (quoting Ford v. Commonwealth, 10 Va. App. 224, 226 (1990))).

knowledge of a victim's age . . . ."). When an expert testifies that a defendant is not a pedophile in these kinds of cases, the only conceivable purpose for which he or she would do so is to offer character evidence on behalf of the defendant to prove the defendant acted in conformity with that character trait on a particular occasion—i.e., to prove the defendant likely did not rape, sexually assault, or sexually batter a minor because the defendant is not a pedophile.[11]

By contrast, Code § 18.2-374.3 provides that a defendant may not be found guilty of soliciting a minor unless the Commonwealth proves the defendant "*knows or has reason to believe*" the person he solicits is "a child younger than 15 years of age."  In this way, the statute explicitly places a defendant's belief as to the victim's age at issue, which means that an expert's "profile" testimony may be used for a particular purpose other than the introduction of expert character evidence.  Thus, by holding that profile evidence is admissible where a defendant is charged under Code § 18.2-374.3, this Court does not decide whether profile evidence is admissible when a defendant is charged with sex crimes involving actual or attempted physical contact with a minor, and therefore leaves any contribution to the debate between the majority and minority of state jurisdictions on that question for another day.  See supra at 14-15, 16 n.11.

B.

In an alternative argument, the Commonwealth urges this Court to affirm on the basis that the trial court's error was "harmless."  This Court declines to do so.

Once this Court determines a trial court erred in excluding evidence sought by a defendant, it becomes the Commonwealth's burden to prove the error was harmless. Montgomery v. Commonwealth, 56 Va. App. 695, 702 (2010).  This Court will not consider an

---

[11] A minority of state courts permit defendants to procure expert testimony for exactly this purpose.  See State v. Gallegos, 220 P.3d 136, 145 (Utah 2009), abrogated on other grounds by Miller v. Utah Dept. of Transp., 285 P.3d 1208 (2012); State v. Davis, 645 N.W.2d 913, 918-22 (Wis. 2002); People v. Stoll, 783 P.2d 698, 708-15 (Cal. 1989).

evidentiary error to be harmless unless it "plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached" even in the absence of the omitted evidence. Campos v. Commonwealth, 67 Va. App. 690, 717 (2017) (quoting Lavinder v. Commonwealth, 12 Va. App. 1003, 1005-06 (1991) (*en banc*)).

In conducting harmless error review, appellate courts must recognize that it "is not the same thing as simply asking 'whether the legally admitted evidence was sufficient' to support the conviction." Commonwealth v. White, 293 Va. 411, 422 (2015) (quoting Satterwhite v. Texas, 486 U.S. 249, 258-59 (1988)). While a sufficiency analysis "asks whether a rational [factfinder] *could* have found the defendant guilty[,]" harmless error review "looks at the other side of the reasonable doubt spectrum" and asks whether the evidence is such "that a rational [factfinder] *would* have found the defendant guilty absent the error[.]" Id. (third alteration in original) (quoting Neder v. United States, 527 U.S. 1, 18 (1999)).

To that end, this Court does not ask itself whether evidence in the record "amply supports the jury's verdict[]," Cartera, 219 Va. at 519, because to do so would run the risk of conflating a harmless error analysis with a sufficiency of the evidence analysis, Hooker v. Commonwealth, 14 Va. App. 454, 458 (1992). Instead, this Court simply determines whether the excluded evidence went to a fact or issue genuinely in dispute and, consequently, whether its omission "may well have affected the jury's decision" on the fact or issue. Cartera, 219 Va. at 519; cf. also Hooker, 14 Va. App. at 458 ("[E]ven if the erroneously admitted evidence was cumulative of other evidence, the fact it tended to prove was genuinely in dispute, and, therefore, we are unable to conclude that it did not affect the verdict.").

With these principles in mind, this Court cannot say appellant "had a fair trial on the merits" or that "substantial justice was reached" when considering the omission of Dr. Fisher's

testimony. Whether appellant believed Jenny was a minor was a fact genuinely in dispute. Some evidence supports the Commonwealth's contention that appellant did believe so (e.g., his repeated reference to Jenny's age in their text conversations and his statement to Investigator Wade that he was delivering items to a girl who said she was "fourteen"). Other evidence supports the contrary (e.g., Jenny's statement that she occasionally drove a car around Liberty University as well as appellant's statement to Investigator Wade that Jenny "seem[ed] a lot older than thirteen" and that there was "no way" a thirteen year old would speak the way Jenny did).

Had Dr. Fisher been permitted to testify that appellant was not a pedophile, the jury may well have inferred that appellant did not believe Jenny was a minor when viewing that testimony together with other supporting evidence. Or it may well have concluded the opposite. Because this Court cannot confidently say one way or the other, however, it cannot hold that the omission of Dr. Fisher's testimony was harmless error. Cf. Lavinder, 12 Va. App. at 1005 ("An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.").

That Code § 18.2-374.3 would permit appellant's convictions so long as he "ha[d] reason to believe" Jenny was a minor does not alter this Court's conclusion. Whether the General Assembly intended to impose an objective criminal negligence standard or a subjective "bad faith" recklessness standard when it adopted the phrase "reason to believe" is an open question in Virginia law. See Stoltz v. Commonwealth, 297 Va. 529, 537 (2019) (suggesting in *dicta* that "reason to believe" language imposes a lower *mens rea* standard than actual knowledge without clarifying what the lower standard is); but see Gorin v. United States, 312 U.S. 19, 27-28 (1941) (holding that "intent or reason to believe" scienter requirement imposed a subjective "bad faith" standard), cited with approval by Stoltz, 297 Va. at 535 n.3.

Because the question presented in this appeal is limited to whether Dr. Fisher's testimony would have violated the ultimate issue rule, this Court does not have occasion to resolve the nature of Code § 18.2-374.3's scienter requirement here. And it would be especially imprudent to do so for purposes of a harmless error analysis, where this Court's duty is simply to decide whether the omission of Dr. Fisher's testimony "may well have affected" the jury's finding as to whether appellant "knew or had reason to believe" Jenny was a minor beyond a reasonable doubt. For that reason, in addition to the others discussed, this Court holds that the trial court's erroneous omission of Dr. Fisher's testimony was not harmless.

C.

But there is a needle to thread here. Upon remand, while Dr. Fisher may testify that appellant does not meet the diagnostic criteria of a pedophile, he may not express an opinion which merely conveys a conclusion concerning appellant's guilt or innocence. Nor may he opine that appellant did not have the required mental state under Code § 18.2-374.3 at the time he is alleged to have committed the offenses.

To put it concretely, there is a meaningful difference between Dr. Fisher testifying something to the effect of "The test results came back and showed appellant is not a pedophile" and testifying "The test results came back, and because of them, I conclude appellant could not possibly have believed he was communicating with a minor on June 6, 2018." The former merely provides information supporting an inference as to appellant's beliefs regarding Jenny's age and is therefore permissible. The latter steps in and makes the inference for the jury and is therefore impermissible.

Additionally, because the issue of entrapment is likely to resurface at appellant's new trial, this Court briefly addresses the bearing of its opinion on that issue here.[12] Given that Dr. Fisher's testimony would not have violated the ultimate issue rule as it relates to whether appellant's conduct met the statutory elements of Code § 18.2-374.3, there is no reason his testimony could not also be used to support an entrapment defense. Indeed, that testimony would have probative value to an entrapment defense; whenever a court reviews such a defense, it considers as relevant, though not dispositive, the question whether a defendant possesses the *predisposition* to commit the alleged offense. See, e.g., Stamper v. Commonwealth, 228 Va. 707, 716 (1985) (holding that evidence was sufficient to support a finding that defendant "had the predisposition and propensity" to possess and distribute marijuana); Swift v. Commonwealth, 199 Va. 420, 424 (1957) ("Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who *would not have perpetrated it* except for the trickery, persuasion, or fraud of the officer." (emphasis added and citations omitted)).

But proof of a lack of a predisposition is "merely one circumstance to be considered in determining whether the intent to commit a crime is solely the product of police activity." McCoy v. Commonwealth, 9 Va. App. 227, 233 (1989). As such, even if the jury infers from Dr. Fisher's testimony that appellant lacked the predisposition to solicit a minor, it must still decide the ultimate issue of whether the "conception and planning of [the] offense" originated

---

[12] It is not entirely clear whether appellant still maintains the position that Dr. Fisher's testimony is relevant to his entrapment defense. The Commonwealth appears to be under the impression that appellant raised the entrapment issue on appeal (the Commonwealth dedicated its brief in substantial part to arguing why Dr. Fisher's testimony cannot be used to support an entrapment defense). And as noted, appellant argues that Dr. Fisher's testimony is relevant to show he lacked a "motive" to solicit a minor, which is quite similar (but not identical) to saying he lacked a "predisposition" to solicit a minor. Given this ambiguity in appellant's arguments and because the Commonwealth had full opportunity to address whether Dr. Fisher's testimony could be used to pursue an entrapment defense, this Court determines it is in the interests of fairness and judicial economy to address the issue in this appeal.

with appellant or with law enforcement.  Id. at 231.  The jury's duty to determine the validity of

appellant's entrapment defense will therefore remain unencumbered, so appellant should be

permitted to use Dr. Fisher's testimony to support that affirmative defense in addition to the

other purposes relevant to his overall defense.[13]

## IV.  CONCLUSION

Dr. Fisher's testimony that appellant was not a pedophile, while relevant to the ultimate

issue of appellant's mental state at the time of the alleged offenses, did not express an opinion on

that issue and would not have invaded the province of the jury.  Accordingly, appellant should

have been permitted to introduce this testimony.  Because he was not allowed to do so, this Court

reverses appellant's convictions and remands for a new trial, should the Commonwealth be so

advised.

<u>Reversed and remanded.</u>

---

[13] Consistent with the rest of this opinion, Dr. Fisher would not be permitted to testify that appellant "lacked the predisposition to solicit a minor."  While the distinction is subtle, that testimony is not the same as simply saying appellant is not a pedophile.  A person who is otherwise sexually attracted to minors may nonetheless lack a predisposition to violate Code § 18.2-374.3—for example, that person could show he or she possesses extraordinary self-control and has learned to subvert his or her sexually deviant preferences through years of discipline.  Conversely, the Commonwealth could prove that a person who is not otherwise attracted to minors had a predisposition to violate Code § 18.2-374.3 in *a particular instance* for circumstantial reasons other than his or her ordinary sexual preferences.

Malveaux, J., dissenting.

I conclude that any presumed error in excluding Dr. Fisher's expert testimony was harmless, and thus I respectfully dissent from the majority's holding.

"Code § 8.01-678 makes 'harmless-error review required in *all* cases'" and "puts a *limitation on the powers of this [C]ourt* to reverse the judgment of the trial court." Commonwealth v. White, 293 Va. 411, 419-20 (2017) (first quoting Commonwealth v. Swann, 290 Va. 194, 200 (2015); then quoting Walker v. Commonwealth, 144 Va. 648, 652 (1926)). See also Spruill v. Garcia, 298 Va. 120, 127 (2019) (noting that an appellate court will "search . . . in all cases for 'the best and narrowest grounds available' for decision," including harmless error (quoting White, 293 Va. at 419)); Swann, 290 Va. at 196 (noting that "[t]he doctrine of judicial restraint dictates" that we resolve cases on the best and narrowest grounds).

Where, as here, an appellant "alleges evidentiary error[,] [w]e examine this claim under the standard for non-constitutional harmless error. [Such] error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Salahuddin v. Commonwealth, 67 Va. App. 190, 211-12 (2017) (fourth alteration in original) (quoting Code § 8.01-678). "This Court may uphold a decision on the ground that any evidentiary error involved is harmless if it can conclude 'that the error did not influence the jury[] or had but slight effect.'" Id. at 212 (alteration in original) (quoting Clay v. Commonwealth, 262 Va. 253, 260 (2001)). "In the context of the required test, such error is harmless where 'other evidence of guilt is so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict.'" Smith v. Commonwealth, 72 Va. App. 523, 543 (2020) (quoting Salahuddin, 67 Va. App. at 212).

As noted by the majority, appellant argues that Dr. Fisher's testimony was admissible both to support his claim that he did not believe "Jenny" was a minor and to show that he lacked motive to solicit a minor.[14] Assuming, without deciding, that the excluded testimony was admissible on these points, I conclude that the evidence against appellant on both these points was overwhelming.[15]

Here, the evidence demonstrates that during their electronic communications "Jenny" told appellant that she was "only 13," would be "fourteen next year," and that girls "a year older" would be "around fourteen." Investigator Wade testified that throughout his email communications with appellant, he consistently represented to appellant that "Jenny" was thirteen. Further, appellant wrote to "Jenny" that she had "a pretty thirteen YO body with growing curves," that she was "no ordinary eighth grader," and that "[i]f I get this excited when you're thirteen how excited will you get me when you're sixteen." Appellant also urged "Jenny" to delete their "text trail" weekly "so no one would get too suspicious by seeing lots of stuff or our ages." When police asked appellant how old "Jenny" was, appellant told them she was fourteen. Appellant also wrote an apology letter to "Jenny's" parents in which he expressed his "remorse for inappropriate texting with your daughter." In light of this overwhelming evidence

---

[14] Like the majority, for the sake of simplicity I use the word "minor" to describe a person younger than fifteen years of age, as required to convict for a violation Code § 18.2-374.3(C). See supra, n.3.

[15] I note that to convict appellant the Commonwealth was not required to prove, as an "ultimate issue[]," that "appellant *believed* Jenny was a minor." See supra, at 10 (emphasis added). Rather, the Commonwealth was required to prove only that appellant "kn[e]w[] or ha[d] reason to believe" that "Jenny" was "a child younger than 15 years of age"—*i.e.*, that appellant had either actual *or* constructive knowledge that "Jenny" was a minor. Code § 18.2-374.3(C); see also Stoltz v. Commonwealth, 297 Va. 529, 535-37 (2019) (affirming the appellant's conviction for computer solicitation of a minor where, although the "facts . . . d[id] not prove that [he] actually knew that [the minor] was underage[] . . . they amply demonstrate[d] that he had *reason to believe* that she was" based upon her representations that she was thirteen, and holding that "[a]t the moment that [he] obtained such reason to believe, his use of the internet for the purpose of solicitation became a crime").

that appellant had reason to believe that "Jenny" was a minor, I conclude that even if Dr. Fisher's expert testimony on this point had been admitted at trial, it could not have affected the verdict.

Likewise, the evidence supports that appellant had motive to solicit a minor, as he repeatedly expressed a prurient interest in "Jenny."[16]  After "Jenny" told appellant that she would be fourteen the following year, appellant emailed her with questions about her vagina.  He asked her, "[d]o you have lots of hair down there or hasn't it come in too much yet, do you shave down there."  He also wondered if "Jenny" didn't "get your period too much yet."  As noted above, appellant also indicated to "Jenny" that he was "excited when you're thirteen" and wondered how much more excited he would be by her when she was sixteen.  Further, appellant complimented "Jenny" on her "pretty thirteen YO body with growing curves" and her knowledge of "how to flirt . . . really well in a sexy way," before observing that she was "so curious about sexual things" and "interested in maybe trying some stuff, hehe, wild girl."  In addition, immediately after telling "Jenny" that she was "no ordinary eighth grader," appellant stated that he was "[s]till thinking about licking [her] tits."  Based upon this overwhelming evidence of appellant's sexual interest in "Jenny," I conclude that Dr. Fisher's testimony on motive would not have influenced the jury or would have had but slight effect.

For the forgoing reasons, I conclude that even if it was error for the trial court to exclude Dr. Fisher's expert testimony, any such error was insignificant by comparison with the evidence of appellant's guilt and thus could not have affected the jury's verdict.  It follows that I would affirm appellant's convictions, and accordingly, I respectfully dissent.

---

[16] I note that the Commonwealth was not required to prove any particular motive, such as pedophilia, in order to convict appellant for computer solicitation of a minor.  While intent "is a requisite element in many crimes, . . . motive is not.  Motive is merely a circumstance tending to prove the guilt of the alleged perpetrator, as its absence may tend to show his innocence." Tibbs v. Commonwealth, 31 Va. App. 687, 704 (2000) (quoting Cantrell v. Commonwealth, 229 Va. 387, 397 (1985)).  Stated differently, "motive is generally a relevant circumstance to establish intent when a conviction is based on circumstantial evidence." Id.